UNITED STATES DISTRICT COURT
B83/50-358                          SOUTHERN DISTRICT OF FLORIDA

SCOTT EARLEY,                               CASE NO.: 00-6104-CIV-ZLOCH

        Plaintiff,                                   MAGISTRATE JUDGE SELTZER

v.

SHERIFF OF BROWARD COUNTY,
FLORIDA and EMSA CORRECTIONAL
CARE, INC.,

        Defendants.
_____/

**NIGHT BOX
FILED**

**SEP 14 2001**

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM OF LAW IN SUPPORT

Defendants, SHERIFF OF BROWARD COUNTY ("SHERIFF"), and EMSA

CORRECTIONAL CARE, INC., ("EMSA") pursuant to Federal Rule of Civil Procedure 56(b) and

Rule 7.1 (c) of the Local Rules for the United States District Court for the Southern District of

Florida, file this Reply Memorandum to Plaintiff's Response to the Defendants' Motion for

Summary Judgment and Memorandum of Law in Support ("Response") and state as follows:

### I.    Introduction

The Second Amended Complaint ("Complaint") alleges that the SHERIFF and EMSA

violated EARLEY'S due process rights under the Fifth and Fourteenth Amendments; his Eighth

Amendment right to be free from cruel and unusual punishment; and a puzzling claimed Ninth

Amendment violation. The factual basis for Plaintiff's claims can be stated succinctly. Earley was

incarcerated for ten days on a misdemeanor conviction in the Broward County Jail. When Plaintiff

arrived at the jail, he was in a wheelchair, having suffered injuries prior to incarceration. (See

Defendants' Statement of Facts, Pg.2) The Second Amended Complaint alleges violation of the stated constitutional provisions because the Defendants failed to render adequate medical care, which worsened Plaintiff's condition. The Second Amended Complaint also alleges that the Defendants, through their agents and employees, breached their duty to render adequate medical care in conformance with the standards of care administered in Florida as a whole.

## II.    **Argument**

### A.    **The Response mischaracterizes the testimony of Scott Earley in an attempt to create a genuine issue of material fact**

The Response asserts that summary judgment is improper in this action, due to the fact that there is a genuine issue of material fact. The Response bases this assertion on inconsistencies in Earley's Answers to Interrogatories, and deposition testimony. In fact, there is no genuine issue of material fact, and the Defendants relied solely upon the Plaintiff's own deposition testimony, and the allegations in the Second Amended Complaint, in setting forth their "Undisputed Materials Facts" in support of their Motion for Summary Judgment. Any inconsistency between Earley's Responses to Interrogatories, and his subsequent deposition testimony, if analyzed, reveals that Earley merely clarified his interrogatory responses during his deposition. Therefore, the Deposition of Scott Earley is a better characterization of his testimony and recollection of the facts surrounding this matter.

The Response asserts that it is undisputed that the Defendants did not provide Earley with his "necessary medications." The Response refers the Court to the "Deposition of SCOTT EARLEY, pg. 35, Lines 9-17" in support of this fact. (Response at P.2) However, the Response mischaracterizes Earley's testimony. The transcript at Lines 9-17 reads as follows:

2

CASE NO.: 00-6104-CIV-ZLOCH

Q:    You stated in your complaint that the Broward Sheriff's
      Office prevented you from receiving adequate medical
      care. Tell me how this occurred.

A:    Well, I didn't receive my medications, and when I did
      receive my medications it was not the correct one. They
      substituted Mylanta for my Pancrease medicine which is
      like, you know, apples and oranges. It is totally two
      different medications.

The above-referenced testimony further clarifies the position of the Defendants in this

matter, that not only did Earley receive medication during his incarceration, but that Earley's

contention in this matter is that he did not receive what he thought to be the "correct" medication to

treat his condition. As previously referred to in the Defendant's Memorandum of Law, a difference

of opinion between an inmate and his healthcare providers, regarding his medical care, does not

establish deliberate indifference. (See Defendant's Memorandum of Law in Support of Motion for

Summary Judgment., Pg. 6; Please see also the Affidavit of Marie Irvin, and Medical Records of

Scott Earley which have been attached as "Exhibit A").[1]

The Response further mischaracterizes the testimony of Earley in its assertion that the

Defendants failed to move Earley, and failed to bathe him, leaving him lying in his own feces. The

Response refers the Court to the *Deposition of SCOTT EARLEY, pg. 38, lines 6-11,* in support of

these assertions. The transcript at pg. 38, lines 6-11 read as follows:

A:    So I asked for help from anyone that could help me
      out, but they saw that I was soiled, and they could
      smell that I was soiled because I was not changed
      or anything during the incarceration, and because
      they saw I was soiled, no one would help me.

---

[1] The Affidavit of Marie Irvin is being filed simultaneously with this Reply and it attached
hereto as "Exhibit A".

3

CASE NO.: 00-6104-CIV-ZLOCH

The Response asserts that Earley was brought up for disciplinary proceedings, and deliberately placed in solitary confinement without medical treatment as punishment for his alleged transgressions, and cites to the "Deposition of EARLEY, Pgs. 23-26, Lines 3-15," as support for this assertion. (Response at P.3) In fact, Earley's testimony on these pages discusses his being punished for inappropriately using the "medical emergency button" and his being told that he could not have a blanket in the day room area, which was a violation of the procedures of the jail This testimony contains no assertions regarding "being placed in solitary confinement without medical care" as was asserted by the Response. (See Deposition of Earley at Pg. 23-26)

The Response asserts that the sacral decubitus ulcer which Earley had at the time he was initially incarcerated, worsened severely during his incarceration. (Response at P.3) The Response relies on the testimony of Patricia White, the Plaintiff's mother, and not a medical expert in support of its assertion that a medical condition became worse as a result of some care or lack of care that was allegedly rendered during the Plaintiff's incarceration. The Response contains no opinion of a medical expert which would substantiate this assertion.

The Response asserts that Earley made numerous complaints regarding his medical care, and that despite these complaints, he was ignored and was instead disciplined. (Response at P.3) The Response cites to "Earley's Responses to Interrogatories" as support for this assertion and in an attempt to create a genuine issue of material fact. As previously stated, and as relied upon by the Defendants in their Motion for Summary Judgment, Earley clarified his "Responses to Interrogatories" during his deposition testimony wherein he admitted that he never filed a grievance related to medical care, throughout his incarceration. (See Deposition of SCOTT EARLEY, pg. 37 and Defendant's Statement of Facts filed in Support of Motion for Summary Judgment at Page 4.)

4

**B.    The Defendants' Motion has been timely filed.**

The Response asserts that Defendants' motion is premature. The pre-trial conference in this matter is presently set for October 12, 2001, and the discovery cut-off is October 5, 2001. As of the date the Defendants filed their Motion, the Plaintiff had not taken one deposition, and had canceled every deposition that he had set as of that date. Further, the Defendants' Motion was filed pursuant to this Court's own deadline for the filing of dispositive motions in this matter.

**C.    The Response cites to no authority which would support its claims**

In order to properly establish a constitutional violation related to medical care Plaintiff must not only show indifference, the alleged indifference must be substantial, and must be related to a "serious medical need." That is, the act or omission must be more than inadvertence, negligence, or gross negligence. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994); *Taylor v. Adams*, 221 F.3d 1251, 1258 (11th Cir. 2000). It is well settled that the "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-83, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105, 97 S.Ct. 285. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. 285.

The Response does nothing to weaken the Defendants' position that this case involves, at most, negligent treatment. The Second Amended Complaint bases the Eighth Amendment claim on

5

CASE NO.: 00-6104-CIV-ZLOCH

the Defendants' breach of their duty to provide "medical care in conformance with the standards for delivery of such care in the State of Florida as a whole" (Second Amended Complaint ¶ 14). Contrary to the assertion of the Response, Earley did receive medical treatment during his incarceration, and his only complaint is that his treatment should have been different. (See Deposition of SCOTT EARLEY, Pgs. 35-36, Defendant's Statement of Facts, P.4 ). This clearly does not raise a constitutional issue according to the authority cited in the Defendants' Motion for Summary Judgment.

Additionally, Earley acknowledges that he did not file any grievances or contact jail officials regarding inadequate medical care (*See Deposition of SCOTT EARLEY, pg. 37 and Defendant's Statement of Facts filed in Support of Motion for Summary Judgment at Page 4* ). Because Earley did not inform the Defendants of his alleged complaints, it can hardly be stated that they were aware of a substantial risk to Earley's health as required by the authority stated in the Defendants' Motion for Summary Judgment.

## D.    The Due Process allegation is without merit

The Response argues that the due process claim is not subject to summary judgment because Earley has made the necessary showing of deliberate indifference. This argument is incorrect for two reasons.

First, as a convicted inmate, Earley's complaints regarding conditions of incarceration are measured according to the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979) (stating that the Eighth Amendment applies to an inmate's conditions of confinement, and the application of the Due Process Clause is pertinent to a pretrial detainee's complaints).

Second, the Response bases its due process argument on the assertion that the Defendants

were deliberately indifferent to Earley's medical needs. As was abundantly shown in the preceding section and in the Defendants' Motion for Summary Judgment, the factual allegations in this case fall well short of showing deliberate indifference.

The Response refers the Court to multiple cases in support of its assertions that the facts in this matter may be sufficient to establish that the Defendants were "deliberately indifferent to the serious medical needs" of Earley. However, the Response fails to cite even one case with facts even somewhat similar to those presented here. For instance, the Response cites to *Ancata v Prison Health Services*, 769 F.2d 700 (11th Cir. 1985) to support its claim that deliberate indifference may be found even when "some" medical care is provided. In *Ancata*, an otherwise healthy inmate began to experience multiple symptoms of which he had not previously complained. The medical staff refused to send the inmate out for evaluation by any specialist without a court order, and indicated that they only way they would do so is if the inmate's family agreed to bear the cost. The inmate was later diagnosed with leukemia, and then later died. *Ancata* at 702. This is not the situation here. Here, Earley was incarcerated in the jail for a ten day period of time. At the time of his incarceration, besides his paralysis, Earley's only medical condition was the existence of a sacral decubitus ulcer, and a urinary tract condition which required Earley to take medication and to catheterize himself. (See Defendant's Statement of Facts, Pg. 3) During his incarceration, Earley was given medication, but disagreed with the type of medication he was given. Earley was also given equipment and supplies to catheterize himself, however, he disagreed with the manner in which they were provided. (See Defendant's Statement of Facts, Pgs. 3-4).

The Response cites to *Rogers v. Evans*, 792 F.2d 1052 (11th Cir. 1986) in support of its contention that deliberate indifference could be found in this matter. In *Rogers*, an inmate

7

BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340 • (954) 761-8600

committed suicide while incarcerated, and due to the existence of a mental condition. The Court, in *Rogers,* determined that it was a general issue of material fact as to whether a prison psychiatrist was deliberately indifferent to the needs of this inmate in the manner in which he managed her condition.

The Response cites to *Nicini v. Morra,* 212 F.3d 798 (3d Cir. 2000) to support its assertion that, when an official's actions shock the conscience, deliberate indifference may be found. *Nicini* is not applicable to the case at bar, in that its discussion focused on whether the State, or its agents would be held responsible for the acts of a foster parent who had abused a child within his care and control.

The Response cites to a case of a foreign jurisdiction, *Leddy v. Township of Lower Merion* , 114 F. Supp.2s 372 (E.D.Pa. Sep 22, 2000) in support of its position. This case is also inapplicable to the issues in this matter, as the issues before that Court dealt with an automobile collision involving a police vehicle, and had no allegations regarding conditions of confinement, or medical care.

The Response fails to cite to any case which would support its position, or which is factually similar to this matter. In fact, the case law cited by the Defendants is more applicable to the case at hand, in that these cases specifically discuss the provision of medical care to inmates within the jail and prison system. (See Defendant's Memo of Law at Pgs. 5-7) Therefore, based upon the undisputed facts as set forth by Earley, and pursuant to the law which has been cited to by the Defendants in their Memorandum of Law, Plaintiff has failed to establish that the Defendants were deliberately indifferent to Earley's serious medical needs during his ten day incarceration in the Broward County Jails.

8

BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P A , PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340 • (954) 761-8600

CASE NO.: 00-6104-CIV-ZLOCH

## E.    The Ninth Amendment does not apply to these facts.

The Response states that the Ninth Amendment claim is applicable because "Earley is merely attempting to preserve his constitutional rights not specifically enumerated" (Response p. 11). As was clearly stated in the Sheriff's Motion for Summary Judgment, the Ninth Amendment is not applicable to the states, and does not create a private cause of action (Sheriff's Motion for Summary Judgment pp. 6-7). Nothing in the Response changes the inevitable: the Sheriff is entitled to summary judgment on the Ninth Amendment claim.

## F.    The Response does not overcome the Defendants' protection from respondeat superior liability.

The Response argues that the Sheriff has a non-delegable duty to provide medical care to inmates, and, therefore, may be held liable on a theory of respondeat superior. Again, the Response misses the point. In order to prevail on a claim for a constitutional violation against a municipal entity brought according to 42 U.S.C. § 1983, a Plaintiff is required to establish that "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." acted to deprive Plaintiff of his constitutional rights. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690, (1978); *see Marsh v. Butler County, Ala.*, 2000 WL 1269679, *2 (11th Cir. 2000). Despite Earley's reliance on the general rules of pleading in federal court, the Supreme Court and the eleventh circuit have made it clear that in actions proceeding under 42 U.S.C. § 1983, summary judgment is appropriate where a plaintiff fails to make the required allegations to state a claim against a defendant. Such is the case here.

The Response sets forth that the SHERIFF has a non-delegable to provide medical care, and that the SHERIFF remains liable for any consitutional deprivations caused by the polices or customs

9

CASE NO.: 00-6104-CIV-ZLOCH

of EMSA. The Response cites to *Wilson v. Taylor*, 733 F.3d 1539, 1545 (11th Cir. 1984) in support

of this assertion. In *Wilson*, the Court was not asked to decide whether the SHERIFF could be found

liable based upon the alleged negligence medical care rendered by an agency with which it contracts,

such as the case here. In *Wilson*, the Court was asked to determine whether the SHERIFF could be

held liable due to a policy which restricted an employee's rights to date. Therefore, the Response

cites no authority in support of its contention that the SHERIFF is liable on a basis of respondeat

superior, for the alleged acts of EMSA employees. In fact, neither the SHERIFF or EMSA may be

held liable based upon a theory of respondeat superior, but instead may only be responsible if it can

be established that a custom or practice of that entity served to deprive the Plaintiff of his

constitutional rights. Plaintiff has set forth no evidence which would support this assertion. *See*

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

## G.    The Eleventh Amendment bars suit against the Sheriff in his official capacity.

The Response asserts that the Sheriff is not protected from suit in federal court by virtue of

Eleventh Amendment immunity. The seeming basis for this assertion is that the Sheriff is a county

officer, and is subject to suit (Response p. 11-13). This assertion is incorrect.

Absent a state's consent to suit or express statutory abrogation, the Eleventh Amendment bars

suits brought in federal court against a state by the state's own citizens. *See Seminole Tribe of Fla.*

*v. Florida*, 517 U.S. 44 (1996). A state's sovereign immunity is not abrogated by 42 U.S.C. § 1983.

*See Quern v. Jordan*, 440 U.S. 332, 343-45 (1979). Without express congressional intent or a waiver

of immunity by the state, the Eleventh Amendment is an absolute bar to suit by an individual against

a state or its agencies in federal court. *Edelman v. Jordan*, 415 U.S. 651, (1974). This immunity

10

includes suits such as the instant case in which a state is being sued by its own citizen. *Hans v. Louisiana*, 134 U.S. 1, (1890). State employees sued in their official capacities are immune from suits for monetary damages under the Eleventh Amendment when the state is the real party in interest. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

When determining whether an entity is a state agency, a federal court looks to the manner in which the entity is treated by the state. *See Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir.1984). In Florida, a county sheriff sued in his official capacity is a "state agency" or "political subdivision" under section 768.28, Florida Statutes (1999). *See Beard v. Hambrick*, 396 So.2d 708, 711 (Fla.1981) (holding that both county and sheriff are "political subdivisions" of state for purposes of section 768.28). The eleventh circuit has determined that Florida has not consented to suits in federal court under 42 U.S.C. § 1983. *See Gamble v. Florida Dept. of Health and Rehabilitative Services* 779 F.2d 1509,1515 (11th Cir. 1986).

Because Florida treats county sheriffs as state agencies for purposes of its limited waiver of sovereign immunity, Congress has not abrogated immunity in these cases, and because Florida has not consented to suits in federal court for alleged constitutional torts, the SHERIFF remains entitled to entry of summary judgment in his favor.

## III.    Conclusion

Based on the foregoing and the argument presented in their Motion for Summary Judgment, the Defendants, SHERIFF and EMSA, remain entitled to entry of final summary judgment in their favor as a matter of law.

WHEREFORE, Defendants, SHERIFF OF BROWARD COUNTY and EMSA CORRECTIONAL CARE, INC., respectfully request that this Court enter Final Summary Judgment

CASE NO.: 00-6104-CIV-ZLOCH

in their favor as set forth above.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was furnished via United States Mail,

this 14 day of September, 2001 to: CARLOS CRUANES, ESQUIRE, HIGH, STACK,

PALAHACH & CRUANES, Attorneys for Plaintiff, 2655 LeJeune Road, Suite 1108, Coral Gables,

Florida 33134.

BUNNELL, WOULFE, KIRSCHBAUM,
KELLER, McINTYRE & GREGOIRE, P.A.
Attorneys for Defendants
888 East Las Olas Blvd., Suite 400
Fort Lauderdale, FL 33301
(954) 761-8600

By: _____
JODI C. PAGE - FBN 0174629

12

Exhibit A

STATE OF FLORIDA                    )
                                   )ss
COUNTY OF BROWARD                   )

I HEREBY STATE THE FOLLOWING:

1.    I am the official custodian of the medical records for the North Broward Detention
      Center

2.    I have reviewed the copy of the medical chart of Scott Earley which is attached as
      "Exhibit 1" to this affidavit.

3.    The medical chart attached as "Exhibit 1" was made by members of the medical staff,
      nurses, and other employees of the medical department at the North Broward
      Detention Center.

4.    The medical chart attached to this affidavit is a complete and accurate copy of the
      medical chart of Scott Earley for his incarceration in the Broward County Jail system
      from February 16, 1999 - February 26, 1999.

5.    It is in the regular course of business for members of the medical staff at the North
      Broward Detention Center with personal knowledge of an act, event, statement,
      condition, or medical study to record information thereof to be included in an
      inmate's medical chart.

6.    Subsequent to each medical staff member's entry into the chart of Scott Earley, the
      documents which made up Scott Earley's medical chart were maintained by me as
      the records custodian at the North Broward Detention Center.

7.    The memoranda or documents that were placed in Scott Earley's original medical
      chart were original entries which were made by members of the medical staff at the
      North Broward Detention Center.

Affidavit of Marie Irvin
Page 2

FURTHER AFFIANT SAYETH NAUGHT.



MARIE IRVIN

BEFORE ME, the undersigned authority, personally appeared MARIE IRVIN,

who after being duly cautioned and sworn, deposed and stated that he/she has read the

foregoing, and the facts set forth therein are true and correct to the best of her knowledge,

information and belief.

SWORN TO and SUBSCRIBED before me this ___14___ day of _September__,

2001.

Notary Public, State of

My Commission expires:

MINERVA C. FINNK
COMMISSION # CC754343
EXPIRES AUG 21, 2002
BONDED THROUGH
ADVANTAGE NOTARY OF FLORIDA

MINERVA C. FINNK
COMMISSION # CC754343
EXPIRES AUG 21, 2002
BONDED THROUGH
ADVANTAGE NOTARY OF FLORIDA



**EMSA** *CORRECTIONAL CARE*

**PROGRESS NOTES**

| Date/Time | Inmate Name: Earley Scott  ID BS 993723 D.O.B.: 2/16/72 |
|-----------|-------------------------------------------------------------|
| 2/25/99 2:00pm | Fac. Note: Blood drawn for SGOT per protocol  Yvonne Wilcher m/a  YVONNE WILCHER, MA  NBB |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

CC 003                    *Complete Both Sides Before Using Another Sheet*


**EMSA** *CORRECTIONAL CARE*

**PROGRESS NOTES**

| Date/Time | Inmate Name: EARLEY, SCOTT  ID # 65993723  D.O.B.: 2/16/72 |
|-----------|-------------------------------------------------------------|
| 2/18/99 10²⁹ | P.A. note |
| | S/ 27 y.o. W/male paraplegic |
| | Hx of spinal cord injury |
| | 20 to MVA (March 18) |
| | Refer to clinic for |
| | evaluation of sacral decub |
| | + med. renewal. |
| | Patient also states hx of |
| | cholecystectomy / pancreatitis |
| | Under the care of Dr. Arline |
| | in Manatee. On Baclofen, |
| | Demerol / Tagamet or |
| | Motrin. 20 to UTI & hx, |
| | did not complete Rx. |
| | O/ 98.3   100   18   120/76 |
| | Patient in wheel chair w/no |
| | P. 3cm / 1.5 cm decubitus |
| | ulcers on sacrum. |
| | extremities + chronic EDEMA |
| | A/ Sacral decubitus |
| | Hx of spinal cord injury |
| | UTI by hx |
| | Chronic bil. foot EDEMA. |
| | P/ See orders |
| | c/ med. renew |
| | RTC - PRN |
| | ERIN CODY, MD          Nathalie M. Innocent |
| |                        PAC |

CC 023                                                                5/95

**EMSA** *CORRECTIONAL CARE*

**PROGRESS NOTES**

| Date/Time | Inmate Name: Farley, Scott | ID # B5993723 | D.O.B.: 2/16/72 |
|---|---|---|---|
| 2/16/99 1800 | S: "I was in a car accident. I do self-Caths as needed. I take lots of medication and I'm supposed to have an air mattress because I have a grade 3 ulcer on my sacrum." | | |
| Weight deferred | O: A+O x 3, uses WC to ambulate, VS = 120/80- 102- 20-98⁴, c/o back pain, Straight cath given to pt who performs own caths. | | |
| | A: Alt mobility - special needs | | |
| | P: Inf Obs until transport to NBB | | |
| | E: Oriented to infirmary, access medical as needed. ———— B. _____ RN MAIN JAIL-BROWARD | | |
| 2/17/99 0300 | S: pt states no complaints | | |
| | O: 27 YOA WM. AAO x 3 - paraplegic states self cath - + incontinent of stool - states I have no control, Sacral decub noted - 4" inch wide - ē mild yellow drainage, buttock ↓ red - pt states able to transfer ē ↑ assistance - VS 102/88, 80 98⁶ 20 | | |
| | A - alt'n ambulation | | |
| | P - Continue ē POC. | | |
| | E - monitored as needed - inform pt f/u access staff as need___ | | |

CC 023

**EMSA** *CORRECTIONAL CARE*

| INTRASYSTEM TRANSFER SUMMARY |
|---|

Transferring Facility: __MJB__

Inmate I.D. # __B5993723__

Inmate Name: __Garley, Scott__     D.O.B.: __2/16/72__

Date of Last H & P: __Due 2/25__     Date of Last PPD: __Due 2/25__     Results: __N/A__

Allergies: __PCN__

Current Health Problems: __Paraplegic, hx Psych, sacral ulcer__

Current Medication (Name, Dosage, Frequency, Duration:) __Bactrim DS T̄ p.o. BID x 5d,__
__Baclofen 10 mg TID x 30d, Tagamet 400 mg T̄ p.o. BID x 30d__

Physical Disabilities/Limitation: __uses WC - paraplegic__

Assistive Devices/Prosthetics: __WC__
"NONE PER CHART REVIEW"                    "NONE PER CHART REVIEW"

Glasses: ____     Contacts: ____

Follow-up care needed: __Psych Hold - takes Zoloft @ home__

Signature __Hoback RN__     CHARLOTTE HOBACK RN / MAIN JAIL BROWARD     Date __2/16/99__

| TRANSFER RECEPTION SCREENING |
|---|

Facility: __NBB__     Deferred     T___ P___ R___ B/P___

S: Current Complaint: __Hx Psych Hx Paraplegia Hx Sacral Ulcer__

Current Medications/Treatment: __Bactrim, Baclofen Tagamet.__

O: Physical Appearance/Behavior: __A&O x3 in w/c incontinent self cath__
__poor hygiene__

Disposition: ( ✓) General Population   ( ✓) Infirmary   Referral: ( ✓) Medical   ( ) Dental   ( ✓) Mental Health

When: ( ) Immediately   ( ) Sick Call   ( ) Other ____

Signature __Borut LP__     Date __2/17/99__

CC 027                                                                 7794

**EMSA CORRECTIONAL CARE**

**PHYSICIAN'S ORDERS**

INMATE NAME: Early, Scott
ID #: BS993723
D.O.B. 2/16/72
ALLERGIES: PCN
Use Last    Date 2.25.99

DIAGNOSIS (If Chg'd)

INMATE NAME: Barly Scott
ID #: BS 99 3723
D.O.B. 2/16/72
ALLERGIES: PCM
Use Fourth    Date 2/25/99

DIAGNOSIS (If Chg'd)
Maurice Waldman, MD
Margaret Kaye, Staff Physician
NBDC / CONTE

INMATE NAME: Earley, Scott
ID #: BS 993723
D.O.B. 2/16/72
ALLERGIES: PCN
Use Third    Date 2/21/99

DIAGNOSIS (If Chg'd) + PPD
Marie Hall / RN
NBDC

INMATE NAME: Early Scott
ID #: SS 893
D.O.B. 2/16/72
ALLERGIES: PCN
Use Second    Date 2/18/99

DIAGNOSIS (If Chg'd)
Nathalie M. Innocent
PAC

INMATE NAME: Earley Scott
ID #: SS 99 3 37
D.O.B. 2/16/72
ALLERGIES: PCN
Use First    Date 2/11/99

DIAGNOSIS
M. Innocent

**EMSA** *CORRECTIONAL CARE*

**PHYSICIAN'S ORDERS**

---

INMATE NAME:

ID #:

D.O.B.    /    /

ALLERGIES:

Use Last    Date    /    /

DIAGNOSIS (If Chg'd)

---

INMATE NAME:

ID #:

D.O.B.    /    /

ALLERGIES:

Use Fourth    Date    /    /

DIAGNOSIS (If Chg'd)

---

INMATE NAME:

ID #:

D.O.B.    /    /

ALLERGIES:

Use Third    Date    /    /

DIAGNOSIS (If Chg'd)

---

INMATE NAME:

ID #:

D.O.B.    /    /

ALLERGIES:

Use Second    Date    /    /

DIAGNOSIS (If Chg'd)

---

INMATE NAME: Earley, Scott

ID #: BS993723

D.O.B. 2/16/72

ALLERGIES: PCN

Use First    Date 2/16/99

DIAGNOSIS

U A

Bactrim DS ī BID x 5 days

Baclofen ~~4O error~~ 10 mg TID x 30d

Tagamet 400 mg ī po. BID x 30d

T.O. Dr. Dauphin / C Holbec CHARLOTTE HOBACK RN
MAIN JAIL BROWARD

CC 006

| MEDICATION ORDERS | HR | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 1 | | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

FEB 99

DSG: Δ Q 3 days
-See treatment
log-

Tylenol III tabs
PO BID X 10 days
START: 2/18   STOP: 2-28-99

Bactrim DS
ī po BID X 7 days
START: 2/18   STOP: 2-25 2-25-99

Baclofen 20mg
PO TID X 30 days
START: 2/18   STOP:

Tagamet 400mg
PO BID X 30 days.
START: 2/18   STOP: 3-20-99

D Ted Stockings
an person
START: 2/2-7   STOP:

D Baclofen 20 mg
PO TID X 30 days
START: 2-18-99   STOP: 3-20-99

Eggcrate Mattress
given Ma
START: 2/24   STOP:

Zoloft 150 mg PO
Q AM X 30 days
2/25/99-
START:   STOP:

Tigan 200mg IM
Q6° PRN X 72 hrs
START: 2/25   STOP:

START:   STOP:

ALLERGY: PCN

DIAGNOSIS: Spinal cord inj.

PHYSICIAN: Innocent

FACILITY: NBB

PATIENT NAME: Harley, Scott

DIET: Reg

PHYSICIAN PHONE #

HOUSING LOCATION: Inf

INMATE #: B59937 23

DOB 2-16-72

| NURSE'S SIG/TITLE | INT. | NURSE'S SIG/TITLE | INT |
|---|---|---|---|
| | | Janice O'Connor / RN NBB-Conte | |
| | | | |

Linda Imhoff, LPN
NBDC / ~~CONFE~~

MEDICATION ADMINISTRATION RECORD



| VITAL SIGNS | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TEMP | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| PULSE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| RESP | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| B.P. | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| WEIGHT | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

### PRN AND MEDICATIONS ADMINISTERED

| DATE | TIME | DRUG | STRENGTH | REASON | NURSE INT | DATE | TIME |
|---|---|---|---|---|---|---|---|
| 2/16 | 8P | Tylenol IH | 200mg | NjV | | | |

### MEDICATIONS NOT ADMINISTERED

| NURSE INT | DATE | TIME | DRUG | STRENGTH | REASON | NURSE INT |
|---|---|---|---|---|---|---|
| | | | | | | |

REASONS:
1. REFUSED
2. NO-SHOW
3. INMATE NOT IN CELL
4. MEDICATION OUT OF STOCK

5. LOCKDOWN
6. SELF-ADMINISTERED
7. OUT TO COURT
8. OTHER

| MEDICATION ORDERS | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAGAMET 400mg Po BID x 30 days | A / P | | | | | | | | | | | | | | | | | | | ✓✓✗✓ | | | | | | | | | | | | | |
| | START: 2-18 | STOP: 3-20 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| BACLOFEN 20mg po TID x 30 days | A / N / P | | | | | | | | | | | | | | | | | | | ✓✓✗✓ | | | | | | | | | | | | | |
| | START: 2-18 | STOP: 3-20 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Zoloft 150mg Po QAM x30day 2/20/99 | A | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | START: | STOP: | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

MEDICATION ADMIN RECORD

MONTH/YEAR

Rc / M

ERROR
~~Informed Consent~~

START: ___ STOP: ___

| ALLERGY: PCN | | NURSE'S SIG./TITLE | INT. | NURSE'S SIG/TITLE | INT. |
|---|---|---|---|---|---|
| DIAGNOSIS: SPINAL CORD INJ | DIET Reg | Donoly | M | | |
| PHYSICIAN Innocent | PHYSICIAN PHONE # | | | | |
| FACILITY NBB | HOUSING LOCATION E2 2 | | | | |
| PATIENT NAME EARLEY, SCOTT | INMATE # B5993723 | DOB 2-16-72 | | | |



**MEDICATION ORDERS**

Bactrim DS ī p.o.
BID x 5d
START: 2/16/99    STOP: 2/20/99

Baclofen 10 mg
p.o. TID x 30d
START: 2/16/99    STOP: 3/16/99

Tagamet 400 mg
ī p.o. BID x 30d
START: 2/16/99    STOP: 3/16/99

ALLERGY: PCN

DIAGNOSIS: paraplegic

PHYSICIAN: Dauphin

FACILITY: MJB

PATIENT NAME: Gailey, Scott

DIET: Reg

PHYSICIAN PHONE #

HOUSING LOCATION: Inf M4#6

INMATE #: B5993723

D.O.B. 2/16/72

MAIN JAIL BROWARD

NURSE'S SIG./TITLE    INT.
NURSE'S SIG./TITLE    INT.

12000 Biscayne Blvd.
Miami, FL 33181
Medicare # L8763 · H.R.S. #800001920
CLIA #10DO686490 · Medicaid #030489100

**BIOTRACE**
LABORATORIES, INC.

Dade: **305/899-9905**
All Other: **800-895-9905**
Fax: **305/899-8920**

| | |
|---|---|
| **Name:** | EARLEY, SCOTT |
| **Phone:** | |
| **SS:** | BS993723 |
| **D.O.B.** | 02/16/71 |
| **Physician:** | NORTH BROWARD J |

ACCOUNT NO. 000003334
NORTH BROWARD JAIL
1550 BLOUNT ROAD
POMPANO BEACH, FL 33069
PH (954) 831-3526

**Sex:** M
**Age:** 28Y
**Page:** 1

| **REQUISTION #** | **LAB #** | **COLLECTION DATE/TIME** | **REVIEW DATE/TIME** |
|---|---|---|---|
| 000419229 | 000419229 | 02/25/99 14:00 | 02/26/99 07:37 |

**REPORT STATUS:**

**NORMAL RANGE**          ALERT VALUE  UNITS1999REF. RANGE
                         RECEIVED  MAR - 1 1999

COMPLETE

AST (SGOT)                              14 L      IU/L      16-40

ERIN CODY, MD
NBB

COPY TO FILE
M.D. INITIAL                    DATE 3/1/99

UPGRADE/NEXT
FOLLOW

NO FURTHER ACTION
                                    DATE

# Portable Medical Diagnostics, Inc.

**Radiology Report**

**2677 Forest Hill Blvd., Ste. 106**
**West Palm Beach, Florida   33406     (561) 964-7984**

RECEIVED  MAR - 1 1999

| | |
|---|---|
| Patient Name: | Early, Scott |
| Arrest Number: | BS993723 |
| DOB: | 02/16/72 |
| Patient Id: | 33-3723 |
| Study: | CXR |
| Facility: | NBB |

### Chest Radiograph,   02/25/99:

A single AP film of the chest was obtained. There are no previous films for comparison.

The heart is not enlarged. There are posterior internal fixation rods overlying the lower thoracic and visualized lumbar spine and there is an inferior vena cava filter overlying the mid right abdomen. The remainder of the lung fields are clear and there are no pleural effusions demonstrated.

### Impression:

No evidence for active cardiopulmonary pathology or tuberculosis.

Signed:
Fred Laufer, M.D.
February 26, 1999
Electronically signed

FL/cs

.M.S.A. - CORRECTIONAL CAR.

FORENSIC MENTAL HEALTH SERVICES

## INITIAL PSYCHIATRIC EVALUATION

DATE: _2_ / _29_ / _99_    TIME: _11:30 / AM_

IDENTIFYING DATA: _27 y/o M/M_

CHARGES: _D.U.I._

CHIEF COMPLAINT: _"I feel depressed"_

REASON FOR REFERRAL: _by lawyer called for P.L_

HX OF THE PRESENT ILLNESS: _he has been depressed since by accident in April 1998 - he was miserable for months. prozac was tried first → vomiting on zoloft since August 98. symptoms were alleviated_

CURRENT PSYCHOTROPICS: _Zoloft 150 mgm. q. A M_

ALCOHOL/DRUG HX: _↑_

SUBSTANCE: _alcohol_

AGE STARTED: _21 y o_

ROUTE:

AMOUNT: _6 packs on week end_

PAST MEDICAL HX: _↑_

ILNESSES: _paraplegia. bed sore. uncontrolled by_

HOSPITALIZATION: _↑_

SURGERIES: _2 surgery on back and leg_

HEAD INJURIES: _none_

ALLERGIES: _peni aller_

CURRENT NON-PSYCHOTROPIC MEDICATION(S) _Bactrim, macloce, tegumet_

NAME _Barey Scott_    R _W_  S _M_  DOB _2.16.72_ # _359 93 722_

CI 1489-25

INITIAL PSYCHIATRIC EVALUATIC

PAST PSYCHIATRIC HX: _†_____

HOSPITALIZATIONS _____

WHEN _____

WHERE _____ *none*_____

WHY _____

LENGTH OF TIME. _____

OUTPATIENT TX: _____

WHEN • _____ *private pxy caiatriat*_____

WHERE _____

SUICIDE ATTEMPTS: _____ *once*_____

WHEN _____

WHERE _____

WHY _____

HOW SEVERE _____ *orla dose un danlord.*_____

HX OF ARRESTS:
JUVENILE / ADULT _____

SCHOOLING: _____ *14 th. grade*_____

MARITAL: _____

ARMED FORCES: _____

OCCUPATION: • . _____ *P V producer.*_____

FAMILY PSYCH HX: _____

1. PSYCHOLOGICAL PROBLEMS
   HOSPITALIZATIONS
   PSYCHOTROPICS _____

2. ALCOHOL/DRUGABUSE _____

3. HX OF SUICIDE _____

MENTAL STATUS EXAMINATION:
ALERT/DROWSY/LITHARGIC
BEHAVIOR:    APPROPRIATE/INAPPROPRIATEDESCRIBE) _____

ATTITUDE:    COOPERATIVE/HOSTILE/GUARDED/DEFENSIVE/SUSPICIOUS/OPPOSITIONAL
             PASSIVE/APATHETIC/MANIPULATIVE _____

ORIENTATION:    PERSON/PLACE/TIME/SITUATION _____ *X4.*_____

EYE CONTACT:    NO/POOR/FAIR/GOOD _____

APPEARANCE:    NEAT/DISHEVELLED/UNKEPT/WELLGROOMED _____

             YOUNGER/OLDER/STATED _____

PSYCHOMOTER ACTIVITY:
             INCREASED/DECREASED/NORMAL _____

IMMEDIATE MEMORY:    GOOD/FAIR/POOR _____

RECENT MEMORY:    GOOD/FAIR/POOR _____

NAME *Darly Scoth*  R M S M  DOB *2-16-72 65993722*

**REMOTE MEMORY:** GOOD/FAIR/POOR _____

**CONCENTRATION:** GOOD/FAIR/POOR _____

**ABILITY TO THINK ABSTRACTLY:** GOOD/FAIR/POOR _____
WITH SIMILARITIES AND DIFFERENCES · WITH PROVERBS _____

**HALLLUCINATIONS:** ADMITS/DENIES/ACTIVELY HALLUCINATING _____
CONTENT - AUD/VIS/TACT/OLFAC/GUSTATORY _____

**DELUSIONS:** PRESENT/ABSENT _____
NATURE/CONTENT _____

**SPEECH:** COHERENT/LOOSE/TANGENTIAL/CIRCUMSTANTIAL/LOUD/SOFT/
MONOTONOUS/SLOW/RAPID/PRESSURED _____

**MOOD:** EUTHYMIC/DEPRESSED/SAD/IRRITABLE/ANXIOUS/ANGRY/HOSTILE/LABILE/
CHEERFUL/HAPPY/EUPHORIC _____

**AFFECT:** APPROPRIATE/INAPPROPRIATE/BROAD/CONSTRICTED/FLAT _____

**SLEEP:** INCREASED/DECREASED _____

**APPETITE:** INCREASED/DECREASED _____ O K _____

**SUICIDE:** IDEATION (YES/NO) INTENTION (YES/NO) _____
PLAN (YES/NO) DESCRIBE _____

**HOMOCIDE:** IDEATION (YES/NO) INTENTION (YES/NO) _____
PLAN (YES/NO) DESCRIBE _____

**INSIGHT:** POOR/FAIR/GOOD/INTACT _____

**JUDGEMENT:** POOR/FAIR/GOOD/INTACT _____

**ABILITY TO GIVE CONSENT FOR TREATMENT:**
INTACT/FAIR/POOR _____

**DIAGNOSIS:**
AXIS I _____ depressive disorder N. O S _____

AXIS II _____ none _____

AXIS III _____ Paraplegia _____

**PLAN:** _____ **LABS:** CBC, SMAC24, U/A, THYROID PROFILE WITH TSH, EKG URINE DRUG SCREEN, BLOOD
LEVELS _____

_____ REFERRAL TO MEDICAL: _____

_____ PATIENT EDUCATION: _____

✓ INTERVENTIONS:

A: INDIVIDUAL THEREPY _____

B: GROUP THERAPY _____

C: MEDICATION:

_____ Paxil _____ (TARGET SYMPTOM) _dep_ _____

_____ (TARGET SYMPTOM) _____

_____ (TARGET SYMPTOM) _____

Maurice Waldman, MD _____ M.D.
Staff Physician

NAME _Burley Scott_ R [M] S [M] DOB _2-16-72_ A# _5599 23 23_

# EMSA CORRECTIONAL CARE

## MENTAL HEALTH QUESTIONNAIRE

NAME: Scott Earley    D.O.B.: 2-16-72    I.D. NUMBER: BS993723

| QUESTIONS | YES | NO | COMMENTS |
|---|---|---|---|
| 1. Have you ever been hospitalized for an emotional or nervous problem? If yes, what hospital? _____ When?_____ | | ✓ | |
| 2. Have you ever received counseling or outpatient treatment for the above? If yes, When?_____ Where?_____ | | ✓ | |
| 3. Are you taking any medication for the above? If yes, what medication are you taking? Zoloft How often? 3x/wk Who prescribed it? MY/L How long have you been taking it? 6 months | ✓ | | |
| 4. Do you use any of the following? How Much? / How Often? / How Long? Beer? No / Wine? No / Liquor? No | | ✓ | |
| 5. Have you ever been treated for alcohol abuse? If yes, how many times?_____ When?_____ Where?_____ How long was treatment?_____ | | ✓ | |
| 6. Have you ever used illegal drugs? If yes, when?_____ What illegal drugs have you used in the last 12 months?_____ When did you start using these drugs?_____ | | ✓ | |
| 7. Have you ever been treated for drug abuse? If yes, how many times?_____ When?_____ Where?_____ How long was treatment?_____ | | ✓ | |
| 8. Have you ever tried to commit suicide? If yes, how many times?_____ When?_____ Where?_____ Were you hospitalized?_____ Where?_____ | ✓ | | 3x times in the last yr. |
| 9. Have you ever thought about killing yourself? If yes, when was the last time?_____ Do you think of it often?_____ sometimes?_____ seldom?_____ | ✓ | | 3x in the last year |
| 10. What grade did you complete in school? 12th Grade Were you in any special education classes? If yes, what classes? No Are you able to read and write English? YES | | | |
| 11. Have you ever been convicted of a violent crime? If yes, when? No Where?_____ For what crime were you convicted?_____ What was your sentence?_____ | | ✓ | |
| 12. Have you ever been convicted of a sexual offense? If yes, when?_____ Where?_____ For what crime were you convicted?_____ What was your sentence?_____ | | ✓ | |
| 13. So people consider you a violent person?_____ | | ✓ | |
| 14. Do you have concerns about your current emotional state as a result of being arrested and placed in jail?_____ | ✓ | | I am not treated fully |
| 15. Do you have a history of being the victim of criminal violence?_____ | | ✓ | |

Clinician Signature: _____    SHIRLEY WILKINS, RN    NBB    DATE: 2/19/99

**MENTAL HEALTH QUESTIONNAIRE**

**EMSA CORRECTIONAL CARE**

PROBLEM LIST

INMATE NAME: _Earley, Scott_

I.D. NUMBER: _B5993723_

D.O.B.: _2/16/72_

ALLERGIES: _PCN_

| Date Identified | Problem No. | Chronic (Long Term) Problems | Date Resolved |
|---|---|---|---|
| 2/16/99 | 1 | Paraplegic | |
| 2/16/99 | 2 | Hx Psych | |
| 2/18/99 | 3 | Cholecystectomy 10/1/99 | |
| " | 4 | H/o Pancreatitis | |
| 2/19/99 | 5. | Hx Substance abuse | |
| | | | |
| | | | |
| | | | |
| | | | |

Temporary (Usually Self-Limiting) Problems

| Prob. No. | Problem | Date of Each Occurence | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | C/o N/V | | | | | | | | |
| 2. | C/o Back pain | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

# EMSA CORRECTIONAL CARE

## TB SKIN TEST SCREENING FORM

NAME: _Earley, Scott_     ARREST#: _BS993723_

DOB: _2/16/72_     LOCATION: _MM #4_

|  | DATE/TIME | SITE | AMOUNT | SIGNATURE |
|---|---|---|---|---|
| PPD ADMIN | 2/19/99 0845 | L.F.A. | 0.1 ML | _S Wilkins_   SHIRLEY WILKINS, RN   NBB |
| READING (within 48-72 hours) | 2/21/99 0945 | RESULTS | -20- MM | _M Hallav_   Marie Hall / RN |
| IF PPD IS POSITIVE: | DATE ORDERED | DATE COMPLETED | RESULTS | SIGNATURE   _M Hallav_   NBDC |
| SGOT ORDERED | 2/21/99 | | | _M Hallav_   Marie Hall   NBDC |
| CXR ORDERED | 2/21/99 | | | |

SIGNATURE:_____

IF PPD IS REFUSED, CHEST X-RAY IS ORDERED:        ☐ YES        ☐ NO

REFUSAL SIGNED (IF APPLICABLE) CHECK ONE:        ☐ YES        ☐ NO

1. NEGATIVE SKIN TEST 0MM-4MM

2. 5MM-9MM IS CONSIDERED POSITIVE ONLY IF:

   A. HIV POSITIVE
   B. THERE HAS BEEN RECENT CLOSE CONTACT WITH SOMEONE WHO HAS TB AND THIS IS A CHANGE FROM NEGATIVE TO A POSITIVE TEST.
   C. THE PERSON IS AN IV DRUG USER
   D. THE PERSON HAS HAD A PREVIOUSLY SUSPICIOUS CHEST X-RAY

3. 10MM & ABOVE IS POSITIVE FOR EVERYBODY ELSE.

*Measure test results 48 to 72 hours after test is given
*Measure only palpable induration (raised area or induration) across widest area, NOT erythema (redness)

## ALL POSITIVES GET:

1) CHEST X-RAY ORDERED
2) SGOT ORDERED
3) CLINIC EVALUATION ORDERED.

CL 3483-24

# EMSA CORRECTIONAL CARE

## HEALTH EVALUATION

CHARGES

Date 2-19-99    I.D. #:    Date Booked 2-16-99    County: Boward    BOND:

### ADMISSION DATA

| | | |
|---|---|---|
| Last Name EARLey | First Scott | Middle A |
| Alias | | |
| Birthplace Tisalegh | DOB 2-16-42 | Phone 954-584-1810 | Religion: Catholic |
| SS# 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 | Marital Status: S M D W Sep | |

Address 570 N.W. 66th Ave
City PlANtAtion    St Fl    Zip 33317
Phone 954-584-1810    Religion: Catholic
Read/Write English? Yes   No   Other:
Health Insurance? Y   N    Carrier: Medicaid   State: FL
Policy Number:

Previous Incarcerations (Date & Facility)
None

NOTIFY IN EMERGENCY: Name Patricia White    Relationship Mother    Address Same AS Above    Phone

### MEDICAL DATA

Family Physician Dr. Arlene Richards    Address    Phone

Previous Hospitalizations/Surgeries/Major Illness/Current Illness: What? Where?
Spinal Cord Injury T-12 L-1 Complete Paraplegic    See H & P ☐

Medications: ☐ None Zoloft, Baclofen, Bactrium    Special Diet (Prescribed):

Allergies: NKA ☐ CN    Tetanus/Immunizations: Y   N   Dates:

**ANY ARRESTEE WHO IS UNCONSCIOUS, SEMICONSCIOUS, ACTIVELY BLEEDING, IN ACUTE PAIN, AND URGENTLY IN NEED OF MEDICAL ATTENTION SHOULD IMMEDIATELY BE REFERRED FOR EMERGENCY CARE.**

### CLINICAL OBSERVATIONS

1) Level of Consciousness    (X) Alert    ( ) Oriented, time, place, person
( ) Lethargic    ( ) Stuporous    ( ) Comatose
Describe:

2) General Appearance:    ( ) Norm    ( ) Abn.
Describe:

3) Substance Abuse.    ( ) Yes    (X) No    ( ) Suspected
( ) Current Intoxication/Abuse    ( ) Use    ( ) Withdrawal Symptoms
( ) Drugs    ( ) Alcohol
Describe: What kind? Amount/Frequency?
Last Use: (Time/Date)

4a) Behavior/Conduct.    ( ) Calm    ( ) Cooperative    ( ) Non-Violent
( ) Agitated    ( ) Uncooperative    ( ) Violent
( ) Manipulative    ( ) Disorganized
Describe:

4b) Affect/Mood:    (X) Normal    ( ) Manic    ( ) Depressed
( ) Euphoria    ( ) Flat    ( ) Confused    ( ) Delusion
( ) Emotional Instability    ( ) Hallucinations    ( ) Hearing Voices
Describe:

5a) Is Patient at High Risk for Suicide?    (X) Yes    No    Jan/43

b) Does Pt. Describe Suicidal Thoughts or Ideations?    ( ) Yes    (X) No

c) Is there evidence of Self Mutilation    ( ) Yes    No

d) High Risk Pt. may become Assaultive towards Staff?    ( ) Yes    (X) No

If ANY of the above in #5 are circled, staff MUST describe here, include previous history and dates:

6a) Communication Difficulties    ( ) Yes    (X) No

b) Memory Defects    ( ) Yes    (X) No

c) Hearing Impairment    ( ) Yes    (X) No

d) Speech Difficulties    ( ) Yes    (X) No

7) Physical Aids: (X) None    ( ) Glasses    ( ) Contacts    ( ) Hearing Aid    ( ) Dentures    ( ) Cane    ( ) Crutches
( ) Walker    ( ) Wheelchair    ( ) Braces    ( ) Artificial Limb    ( ) Other

8) A/Comments, Complaints, Symptoms:    None ☐

S)

O)

A)

P)

CC 017    7794

# HEALTH EVALUATION

Age 27  Sex M  Race W  Ht 4'10"  Wt 145

| / Temp | BP | / | Pulse | Resp. |
|---|---|---|---|---|
| 98.8 | 120/80 | | 60 | 16 |

Receiving Screening [X]
Health Assessment

Do you now or have you ever had, or been treated for:

| Problems | Y | N | Problems | Y | N | | APPRAISAL | N | Abn/Comment |
|---|---|---|---|---|---|---|---|---|---|
| Head Trauma 1998 | X | | Kidney Stones/Disease 1998 | | X | | **Screening Observation** | [X] | **Check Items Below & Initial** |
| Loss of Consciousness | X | | Bladder/Kidney Infection | | X | General | Movement, Deformity Pain, Bleeding | [ ] | MVA 1998 |
| Severe Headaches | | X | Alcoholism | | X | | Habitus, Hygiene | | Paraplegic |
| Vertigo/Dizziness | | X | Drug Abuse | | X | Neuro | Mental Status, Intox Withdrawal, Tremors | X | |
| Vision Problems | | X | Tobacco Use 1/2 PPD | X | | | Neuro-deficits | | |
| Hearing Problems | | X | Psychiatric Hx | | X | Skin | Injury, Bruises, Trauma Jaundice | X | |
| Dental Prob./Dentures | | X | Suicidal | | X | | Diaphoretic, Rash Lesions, Infestations Needle Marks | | |
| Seizures | | X | **Communicable/Contagious** | | | | Color, Turgor | | |
| Strokes | | X | Tuberculosis | | X | Head | Normocephalic Atraumatic | X | |
| Nervous Disorders | | X | H.I.V. Positive | | X | | Hair, Scalp | | |
| DT's | | X | A.I.D.S. | | X | Eyes | Glasses/Vision Pupils | X | |
| Heart Condition | | X | Hepatitis | | X | | Sclera, Conjunctiva | | |
| Angina/Heart Attack | | X | VD - Gonorrhea | | X | Ears | Appearance Canals, TM's, Hearing | X | |
| High B.P. | | X | VD - Syphilis | | X | Nose | Epistaxsis, Sinuses | X | |
| Anemia/Blood | | X | Lice; Crabs; Scabies | | X | Throat | Teeth, Gums, Dentures Mouth, Tongue, Tonsils Airway | X | |
| Lung Condition | | X | **OB/GYN** | | | | | | |
| Asthma | | X | LMP Date: | | | Neck | C Spine, Mobility Veins, Carotids | X | |
| Bronchitis | | X | Duration: | | | | Thyroid, Lymph Nodes | | |
| Emphysema | | X | LMP Normal: | | | Chest | Contig Ausc./Resp. Cough/Sputum | X | |
| Pneumonia | | X | Regularity: | Y | N | (Breasts) | Masses | | |
| Diabetes | | X | Gravida/Para: | | | Heart | Ausc Rate, Rhythm Murmurs, Ectopy | X | |
| Hay Fever/Allergies | X | | AB/Miscarriage: | | | | | | |
| Gastritis | | X | Contraception: | Y | N | Abdomen | Bowel Sounds Palp, G/R/T, Hernia | X | |
| Ulcers | | X | Describe: | | | | | | |
| Bleeding | | X | **LAB Tests** - Dates | N | Ab | GU | Flank Tenderness Bladder Tenderness /Distention | X | |
| Gall Bladder/Pancreas 10/98 | X | | VDRL/RPR deferred | | | | | | |
| Liver Problems | | X | PPD 2/19/99 0845 | | | Back | ROM, Spasm, Injury | | |
| Arthritis | | X | HIV | | | Extrem | Edema, Pulse Cyanosis - ROM, Injury | | Paraplegic |
| Joint Muscle Problem N/A | | | SMA | | | Genitals | Injuries/Lesions | X | |
| Back/Neck Problem | | | CBC | | | Pelvic / Pap | Deferred X | | |
| Deferred/Follow-Up: | | | U/A Dipstick | | | Rectal / Gulac | Deferred | | |
| | | | | | | Dental Hygiene Instructions: Given | | Initials |

Comments: C/o Back Pain; N/V. to be seen by Inf nurse

Placement: ( ) General Population ( ) Infirmary ( ) Emergency Dept ( ) Isolation ( ) Observation ( ) Other: _____

Referral: ( ) Medical ( ) Dental ( ) Mental Health ( ) Other _____ When: ( ) Immediately ( ) Next Sick Call

Screener's Signature          2/19/99  0845
Date/Time

ERIN CODY, MD
Evaluator's Signature (RN, NP, PA, MD)

3 1 99
Date/Time

CC 017          SHIRLEY WILKINS, RN
NBB

7794

**EMSA CORRECTIONAL CARE**
**CONSENT TO MENTAL HEALTH EVALUATION OR TREATMENT**

Contracts which you have with the mental health staff of the Broward County Sheriff's Office are usually considered confidential or privileged communication. This means that, generally, whatever you say and your testing results are held in confidence. It is very much like the confidentiality that exists between lawyers and their clients.

However, there are limits to confidentiality which you need to be aware of. Other mental health and health services staff within the Sheriff's Office have access to notes which are kept regarding all mental health contracts. If you decide to receive counseling or other mental health treatment, supervisors in Mental Health will be reviewing your records and discussing your situation with the mental health worker who has been or is seeing you. There are mental health staff meetings in which your counselor will discuss your situation with mental health staff who may not be seeing you.

Furthermore, if you tell mental health staff that you intend to harm yourself or someone else, or threaten the security of the Jail, mental health staff will advise other staff of such danger, in order to protect your well-being and that of others. If you identify any minor child, elderly, or disabled person who has been the victim of physical or sexual abuse, mental health staff will notify the Department of Health and Rehabilitative Services Abuse Hotline. Also, officials of the court, law enforcement officials, Department of Health and Rehabilitative Services staff or as otherwise provided by the law may review or receive copies of your mental health records without your prior authorization. Your mental health records may also be released by your written consent.

Your signature below indicates that you have read this statement or that it was read to you, that you understand the limits of confidentiality within the Broward County Sheriff's Office and that you agree to receive the following mental health services:

"Mental Health Evaluation and Treatment as needed until I withdraw my consent."

_____
Patient's Signature

$\underline{2 \cdot 2 \int 44 \ 11^{2} \text{a}/\text{h}}$
Date/Time

_____
Staff Signature

$\underline{2 \cdot 2 \int 44 \ 11^{20}/\text{h}}$
Date/Time

_____
Witness Signature

_____
Date/Time

Name _Bushy Scott_     R M S M DOB _2·16·72_ # _850987 22_

## EMSA CORRECTIONAL CARE
## INFORMED CONSENT (ANTIDEPRESSANTS)

**MEDICATION:** For example: Elavil, Tofranil, Pamelor, Desyrel, Sinequan, Ludiomil, Norpramin, Vivactil, Asendin, Surmontil, Prozac, Zoloft, or any other anti-depressant.
**PURPOSE:** These medications are mood elevators used to treat mental depression, and the depression that occurs with nervousness. They work by improving the balance of chemical substances within the brain.
**COMMON SIDE EFFECTS:** Common side effects include, but are not limited to: Sleepiness, dry mouth, blurred vision, constipation, difficulty urinating, light headedness upon arising, rash, occasional affects on the heart rate and blood pressure. If you experience any of these or other side effects, please report them to any member of the health care staff.
**ALTERNATIVE THERAPIES:** It has been determined, at this time, that this category of medication is one of the most effective therapies available for the treatment of depression. Other treatments include activity therapies and talk therapies such as counseling or behavior therapy.
**APPROXIMATE LENGTH OF CARE:** The medication usually acts within a few days. Significant benefit may occur within three weeks. Maximum benefit may require regular usage. The doctor will adjust the dosage from time to time, in most cases, to the minimum dosage that meets your needs. The doctor may order laboratory tests from time to time to ensure that the medication is safe. The doctor, at a minimum, reviews the medication and its effect every month.
**NOTIFICATION:** I understand that I can decide to stop taking this medication at any time by telling the doctor or any other health care staff. If I decide to stop taking this medication, it will not affect my ability to receive other health care.
**RISKS AND HAZARDS:** Avoid alcohol. Avoid operating a motor vehicle or other activities that require alertness. Avoid excessive exposure to sunlight, or exposure to sun lamps. Sudden discontinuation of this medication may cause medical problems.

I understand that by signing this form I am agreeing to let EMSA Correctional Care, a contracted agent, treat me with a psychotropic drug. I have been given and have had explained information about the nature of this treatment and the reason I am being treated. I have also been informed about alternative treatments, the risks and hazards associated with this treatment, the possible side effects that I may experience from this treatment, and the length of time that I will be taking this drug. I have been given a chance to ask questions about my treatment, and have had all my questions answered. I understand that I can discuss any other questions I might have about my treatment with the doctor, and that a copy of this form will be given to me.

Patient's signature: _____ Date 2/05/99 Time 11/30/H

Staff signature: _____ Date 2/25/99 Time 11/30/H

NAME _____ R M S M DOB 2/6-72 # B5092722

# CORRECTIONAL CARE DIVISION
## DATE: _____
## INDIVIDUAL WRITTEN TREATMENT PLAN

### SECTION I - PROBLEM LIST

1. _____ depression
2. _____
3. _____ •

### SECTION II - SERVICES

| | |
|---|---|
| ✓ | Psychiatric Follow-Up |
| ✓ | Psychotropic Medication Renewal/Adjustment |
| ✓ | Medication Compliance Monitoring & Recording |
| | Group Therapy |
| | Individual Therapy |
| | Aftercare Planning |
| | Other: |

### SECTION III - TREATMENT GOALS

1. reduce depression
2.
3.
4.

### SECTION IV - SERVICE PROVIDERS

| 1. | 3. |
|---|---|
| M k | Maurice Waldman, MD<br>Staff Physician |
| 2. | 4. |

INMATE PATIENT SIGNATURE: _____

## TREATMENT LOG

NAME Earley Scott    D.O.B. 2·16·72    ARREST # BS993723

LOCATION Inf    ORDER DATE 2·18·99    STOP DATE 3·17·99

INSTRUCTIONS: DSg A Q 3 days c̄ NS, Nu-gel + apply Hydrophelic Polyurethane Dsg. X 30 days

| DATE | TREATMENT RENDERED | OBSERVATION | NURSES SIGNATURE |
|------|-------------------|-------------|------------------|
| 2-21-99 | Cleansed of mod. amt. eschar surrounding decubitus. Edges ranged, bleeds freely | stage III blee do freely c̄ cleans | Stage III Cleans. |
| 2-22-99 | | | B Hains, LPN |
| 2-22-99 | DSA done c̄ NS, Nugel, and dry dsg. Stage III decubitus c̄ small amt of bloody drainage noted | | Davidson, RN |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

ORDERED BY MD(PA): Innocent

**EMSA CORRECTIONAL CARE**

**MEDICAL PASS**

DATE: 2/18/99

RE:

NAME: Earley, Scott

ARREST: BS993723

D.O.B.: 2.16.72

*DUE TO A HEALTH CONDITION THIS PATIENT MAY HAVE:*

| | PLACE AN "X" ON THE ITEMS BEING ORDERED | DURATION OF PASS ORDER | | | |
|---|---|---|---|---|---|
| | | 1 MO. | 2 MOS. | 3 MOS. | INDEF. |
| EXTRA MATTRESS | | | | | |
| EXTRA PILLOW | | | | | |
| EXTRA BLANKET | | | | | |
| LOW BUNK ASSIGNMENT | | | | | |
| WHEELCHAIR | | | | | |
| CANE | | | | | |
| WALKER | | | | | |
| OTHER egg crate mattress | X | | | | X |

* MEDICAL APPLIANCES FROM PROPERTY:

READING GLASSES ☐ INDEFINITE TILL RELEASED

EYEGLASSES ☐ INDEFINITE TILL RELEASED

OTHER ☐ (SPECIFY) _____

_____
HEALTH PROVIDER SIGNATURE

Nathalie M. Innocent
PAC
_____
NAME STAMP OR PRINTED NAME

*NOTE: COPY OF THIS FORM TO BE DISTRIBUTED TO THE PROPERTY DEPUTY IF THIS AREA WAS COMPLETED*

CC 0?? **WHITE - HEALTH RECORD** **CANARY - HOUSING UNIT** **PINK - CLASSIFICATION UNIT**

## EMSA CORRECTIONAL CARE

### MEDICAL OBSERVATION SHEET
### SEGREGATION / ISOLATION

Name: Early, Scott

ID#: BS-44-3723

D.O.B.

| DATE | TIME | DESCRIBE CURRENT CONDITION: (Awake, Sleeping, Agitated, Talkative, Hostile, O.K., Sloppy, Depressed, Very Quiet, etc.) | ANY VERBAL HEALTH COMPLAINTS AS STATED BY INMATE | ANY SIGNIFICANT PHYSICAL FINDINGS | SIGNATURE |
|---|---|---|---|---|---|
| 9/9/99 | 6 | At door in w/c | None stated | Pt in w/c | [signature] |
| 9/9 | 4p | sitting on bunk ok | none stated | none seen | [signature] |
| 9/9 | 4p | lying on bunk meds taken well | none stated | none seen | [signature] |